UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| NATALIE LATRICE WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO.<br>5:13-CV-135-BG<br>ECF |

**REPORT AND RECOMMENDATION**

Plaintiff Natalie Latrice Williams filed this action seeking judicial review of the Commissioner's decision to deny her application for disability insurance benefits and supplemental security income. The district court transferred the case to the undersigned but both parties did not consent to proceed before a magistrate judge. The undersigned now enters this Report and Recommendation.

**I.      Statement of the Case**

The standard under which the Commissioner reviews a claim for disability insurance benefits involves a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920 (2014). Under the sequential evaluation, an administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

In this case the ALJ made her decision at the fifth step of the sequential evaluation. She determined at the first three steps that Williams had not engaged in substantial gainful activity since

February 15, 2011; suffered from severe impairments, including bipolar disorder and degenerative joint disease of the knee and shoulder; and that the impairments did not satisfy the criteria of a listed impairment. (Tr. 13.) At the fourth step of the evaluation, the ALJ determined that Williams retained the functional capacity to perform sedentary work that involves only occasional climbing of ramps and stairs; no climbing on ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; "fingering and fine manipulation limited to occasional"; and "reaching overhead with both upper extremities limited to frequent." (Tr. 18, 51–52.) The ALJ further determined that Williams was able to understand, remember, and carry out detailed but not complex instructions; make decisions; attend and concentrate for extended periods of time; interact with others; accept instructions; and respond to changes in the work settings. (Tr. 18, 51.) Based on testimony from a vocational expert, she determined that Williams' residual functional capacity would preclude her past work as a nurse assistant and fast food restaurant shift manager but that she was capable of performing other work, including that of appointment clerk, maintenance dispatcher, and call out operator. (Tr. 18–20, 52.) The Appeals Council denied Williams' request for review. (Tr. 1–3.)

Williams brings two arguments. She argues the ALJ (1) failed to properly evaluate her rheumatoid arthritis at steps two and three of the sequential evaluation and (2) failed to incorporate mental limitations into the determination regarding her residual functional capacity. Williams' second argument has merit.

**II.   Discussion**

The term "residual functional capacity" is used to indicate the most a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining residual functional

capacity, the ALJ considers all of the relevant evidence, including medical opinions, to determine the individual's ability to meet the physical demands, mental demands, sensory requirements, and other requirements of work.  20 C.F.R §§ 404.1545(a)(3),(4), 416.945(a)(3),(4).  Williams argues that the ALJ failed to incorporate into the residual functional capacity determination the limitations Margaret Meyer, M.D., a state agency physician, found regarding her mental abilities.

As Williams points out, Dr. Meyer completed a Mental Residual Functional Capacity Assessment form on which she indicated that Williams was moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to maintain attention and concentration for extended periods of time.  (Tr. 430.)  In contrast, the ALJ determined that Williams had no limitations in her ability to understand, remember, and carry out detailed instructions and was capable of concentrating for extended periods of time.  (Tr. 18, 51.) As Williams further points out, Dr. Meyer determined that Williams was moderately limited in her ability to work in coordination with or proximity to others without distraction, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavior extremes, and respond appropriately to changes in the work setting. (Tr. 430–31.)  The ALJ found that Williams had no limitations in her ability to interact with others; accept instructions; and respond to changes in the work settings.  (Tr. 18, 51.)     It should be noted that Dr. Meyer's opinions regarding the moderate limitations in Williams' mental abilities were provided on a check mark format.  (Tr. 430–31.) It should further be noted that Dr. Meyer also provided a statement: "Claimant [is] able to understand, remember, and carry out detailed but non-complex instructions, make important decisions, attend and concentrate for extended periods, interact with others, accept instruction and

3

respond to changes in work settings." (Tr. 422.) Dr. Meyer therefore omitted from her statement her opinion that Williams would be moderately limited in her ability to perform mental requirements of work. The ALJ adopted Dr. Meyer's statement and ignored her opinion regarding the moderate mental limitations Williams would be expected to experience while working. (Tr. 18, 51.)

Although the moderate limitations Dr. Meyers found would not necessarily preclude all work, they arguably have a bearing on the types of jobs that Williams is capable of performing: "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." 20 C.F.R. §§ 404.1545(c), 416.945(c).

Other evidence in the record demonstrates that Williams' mental limitations would, in fact, impact her ability to perform work. The medical evidence shows that numerous doctors diagnosed Williams with severe bipolar disorder, depression, and anxiety. (Tr. 248, 361, 389, 419, 461.) Medical personnel who treated Williams believed that she suffered from post-traumatic stress disorder as a result of domestic assault, demonstrated behavior consistent with agoraphobia and paranoia, and had problems with impulse control and anger management. (Tr. 155, 190, 251–52, 339, 444, 454.) In addition, physicians assigned her a Global Assessment of Functioning (GAF) Score of 50. (Tr. 252, 340, 444.) A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). An individual assigned a GAF score of 50 would be expected to experience serious to major impairments in social and occupational functioning. *Id*.

4

Significantly, state examining psychologist William E. Hoke, Ph.D., examined and diagnosed Williams with severe adult antisocial behavior as well as bipolar disorder, depression, and anxiety. (Tr. 361.) Although he reported that Williams was oriented and that her thought processes were logical and goal-oriented during his interview, he also reported that overall levels of intelligence, judgment, and insight "appear[ed] to be significantly impaired." (Tr. 360–61.) He reported that results of mental and psychological tests were "consistent with a number of significant difficulties which are likely to be quite problematic for Ms. Williams. She is likely to struggle to be employed on a consistent basis . . . Certainly, she is likely to struggle in the future and her ability to maintain consistent employment may be limited as well." (Tr. 362.) Dr. Hoke concluded that the probability of any meaningful improvement in her condition appeared to be "fairly limited." *Id.*

Given the foregoing evidence, substantial evidence does not support the ALJ's determination that Williams' mental impairments would have no effect on her ability to work. The court is charged with determining whether the Commissioner's denial of disability benefits is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). Because substantial evidence does not support the ALJ's residual functional capacity determination, remand should issue.

### III.   Recommendation

The undersigned recommends that the district court reverse the Commissioner's decision and remand Williams' case for further administrative proceedings.

**IV.     Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     April 22, 2014.

NANCY M. KOENIG
United States Magistrate Judge